**David BALCORTA, Plaintiff,**

v.

**20TH CENTURY FOX FILM CORPORATION, Defendant.**

No. CV 98–2653 RAP (MANx).

United States District Court, C.D. California.

July 16, 1998.

Michael S. Villeneuve, Wohlner Kaplon Phillips Young & Barsh, Encino, CA, for plaintiff.

Gary Dale Roberts, Jeffrey F. Webb, Fox Group, Legal Department, Los Angeles, CA, for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE TO STATE COURT AND AWARDING ATTORNEYS' FEES

PAEZ, District Judge.

## I.

### Introduction

This is an action for statutory waiting time penalties brought by an electrical rigger employed by defendant Twentieth

Century Fox Film Corporation ("Fox") under Cal.Lab.Code § 203. Having removed the case on two separate occasions, *see* Order Remanding Case to California Labor Commissioner, CB 98–1814 RAP (MANx) filed concurrently, defendant seeks summary judgment based on its contention that plaintiff's claim is preempted by § 301 of the Labor Management Relations Act ("LMRA") and that the six month statute of limitations under the LMRA has run. Alternatively, defendant requests the Court stay the action and compel arbitration pursuant to § 301 of the LMRA and the Federal Arbitration Act.

Plaintiff seeks an order remanding the case back to the Los Angeles Municipal Court and requests attorneys' fees pursuant to 28 U.S.C. § 1447 in the amount of $1,950 to compensate him for defendant's wrongful removal of the action.

## II.

### *Factual Background*

Plaintiff David Balcorta worked as a daily electrical rigger for Fox, earning $24 per hour. He is a member of Studio Electrical Lighting Technicians, Local 728, International Alliance of Theatrical Stage Employees and Moving Picture Technicians, Artists and Allied Crafts of the United States and Canada, AFL—CIO ("Local 728"). Fox and Local 728 are parties to a collective bargaining agreement ("Local 728 CBA") which governs the terms and conditions of employment of electrical riggers such as plaintiff.

California Labor Code § 201.5 requires motion picture industry employers to pay all wages due within twenty-four hours upon an employee's discharge. For violation of the rule, the statute imposes a penalty equal to a day's wages for each day the payment is late up to thirty days. Cal.Lab.Code § 203. Plaintiff filed a com-

plaint for statutory waiting time penalties under Cal.Lab.Code § 203 with the California Labor Commissioner on February 6, 1998, setting forth the following instances in which he was paid late subsequent to discharge:

(1) Last day worked: July 10, 1997; paid July 20, 1997 (9 days late);

(2) Last day worked: August 6, 1997; paid August 11, 1997 (4 days late);

(3) Last day worked: August 10, 1997; paid August 22, 1997 (11 days late);

(4) Last day worked: August 19, 1997; paid August 26, 1997 (6 days late);

(5) Last day worked: August 22, 1997; paid September 5, 1997 (14 days late);

(6) Last day worked: August 25, 1997; paid August 29, 1997 (3 days late);

(7) Last day worked: August 29, 1997; paid September 4, 1997 (3 days late);

(8) Last day worked: September 4, 1997; paid September 19, 1997 (4 days late);

(9) Last day worked: September 13, 1997; paid September 22, 1997 (8 days late);

(10) Last day worked September 20, 1997; paid September 25, 1997 (2 days late); and

(11) Last day worked: October 11, 1997; paid October 18, 1997 (5 days late). Plaintiff subsequently withdrew this claim.

Fox removed the administrative complaint to this Court on March 12, 1998 (CV–98–1814 RAP) alleging federal question jurisdiction under 28 U.S.C. § 1331. Following a hearing on March 13, 1998, the Labor Commissioner awarded plaintiff $14,208 in statutory waiting time penalties as the result of ten instances of late payment of wages from July 1997 to Septem-

ber 1997. Fox filed a Notice of Appeal of the Labor Commissioner's Decision in the Los Angeles Municipal Court on April 3, 1998. Fox removed the Municipal Court action on April 9, 1998 (CV–98–2653 RAP).

## III.

### *Discussion*

A. Federal Preemption under § 301 of the LMRA

1. Standard

■ Section 301 of the LMRA provides that " [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court having jurisdiction of the parties[.]" 29 U.S.C. § 185(a). The purpose of such broad preemptive power is to prevent state courts from purporting to rule on the legal consequences intended to flow from the breach of a collective bargaining agreement, and to prevent parties from reneging on arbitration promises in a collective bargaining agreement, by "relabeling" breach of contract claims as tort claims. *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). Section 301 has thus been interpreted "as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis–Chalmers v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), explaining *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The need to establish a single body of federal labor law has been found by the courts to be compelling. "The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace." *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

■ Section 301 has been broadly construed to cover most state claims that require interpretation of collective bargaining agreements. *Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356 (9th Cir.1997). The preemptive force of the LMRA displaces any state law causes of action that require interpretation of, and are not independent of, a collective bargaining agreement. Schwarzer, Tashima, and Wagstaffe, CAL.PRAC. GUIDE: FED. CIV.PRO. BEFORE TRIAL § 2:722 (The Rutter Group 1997) (hereinafter Schwarzer); *see also Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23–24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), *superseded by statute on other grounds as stated in Ethridge v. Harbor House Restaurant*, 861 F.2d 1389 (9th Cir.1988). State law is preempted by the LMRA only if the court must interpret, rather than merely refer to or examine, the collective bargaining agreement. *Lingle v. Norge Division of Magic Chef*, 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In other words, preemption is only proper if a state law claim is "substantially dependent on analysis of a collective bargaining agreement." *Id., citing Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. 1904. The Supreme Court instructs, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 124, 114 S.Ct. 2068. Indeed, " 'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective bargaining agreement.' " *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).

■ Moreover, as the Supreme Court clarified in *Livadas*, "§ 301 does not dis-

able state courts from interpreting the terms of collective bargaining agreements in resolving non-preempted claims." 512 U.S. at 124 n. 17, 114 S.Ct. 2068.[1] State law claims are not broadly preempted if they are based on an employee's exercise of an independent or "non-negotiable," right protected by state law or public policy. *Id.* A nonnegotiable right cannot be bartered away through collective bargaining. Thus, "where a plaintiff contends that an employer's actions violated a state-law obligation, wholly independent of its obligations under the CBA, there is no preemption." *Espinal v. Northwest Airlines,* 90 F.3d 1452, 1456 (9th Cir.1996) (following *Lingle* and applying LMRA preemption test to Railway Labor Act preemption.) The test is whether the evaluation of the state claim is "inextricably intertwined with consideration of the terms of the labor contract." *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. 1904.

■ Courts must determine whether the state law provision confers non-negotiable rights on employers or employees independent of any right established by contract or the evaluation of the claim is inextricably intertwined with terms of a labor contract. *Id.* at 219–20, 105 S.Ct. 1904. Analysis of federal preemption, "turns on the actual content of respondent's policy and its real effect on federal rights." *Livadas,* 512 U.S. at 119, 114 S.Ct. 2068.

### 2. Application

In Fox's moving papers, it recounts seven provisions of the Local 728 CBA that it maintains must be interpreted and applied to resolve plaintiff's claim for late payment of wages. At oral argument, Fox focused on only three provisions:

(1) ¶ 19 of the Local 728 CBA, "Pay-off Requirements" provides:

(a) The regular pay day will be on Thursday (holiday weeks excluded). When employee is laid off and requests pay at time of layoff, he shall be paid within twenty-four (24) hours, excluding Saturdays, Sundays and holidays.

(b) If, due to the fault of the Producer, an employee does not receive wages or salary on a timely basis, the Producer shall, within three (3) days after being so notified by the employee, issue a check in payment of same to the employee.

*See* Local 728 CBA at 34 attached as Exh. A to Defendant's Motion for Summary Judgment.

(2) ¶ 14 of the Local 728 CBA, "Layoff Provisions" defines when "Off Production" employees are deemed laid off.

(a) Any employee not personally notified of his discharge at the end of his shift, who reports for work at his next regular shift, shall be considered as having been called for a minimum call. Shifts commencing on days that would otherwise be the sixth or seventh day worked in the employee's workweek shall not be considered as regular shifts.

*See* Local 728 CBA at 31.

(3) ¶ 18 of Local 728 CBA, "Stand-by Calls," prohibits "relay" or "standby" calls, except when the employee is scheduled to work on a day just prior to or after a holiday.

*See* Local 728 CBA at 33–34.

Fox contends that the following issues must be determined through interpretation of the '728 CBA: (1) whether plaintiff was in fact laid off on the dates he claims; (2)

---

1. The Supreme Court had previously noted that it "is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of the collective-bargaining agreement for its application. Such a remedy would be preempted by § 301." *Lingle,* 486 U.S. at 407 n. 7, 108 S.Ct. 1877.

if so, when each of the layoff occurrences are deemed to have occurred; (3) what amount of wages were due to plaintiff on each alleged layoff occasion; and (4) whether the payment of these wages was timely under the terms of the CBA.

■ However, all of these factual issues can be resolved without interpreting any provision of the Local 728 CBA. Plaintiff's claim for waiting time penalties is quite narrow, and exists independently from the Local 728 CBA. Fox cannot distinguish *Livadas,* in which the Supreme Court concluded that Cal.Lab.Code § 203 was not preempted by § 301 of the LMRA. In *Livadas,* a supermarket clerk's employer failed to pay her wages due upon her discharge, but paid them three days later. 512 U.S. at 111, 114 S.Ct. 2068. Like Mr. Balcorta, Ms. Livadas filed a claim with the California Labor Commissioner seeking penalties for late payment of wages pursuant to Cal.Lab.Code §§ 201 and 203. There was no dispute about the amount owed to Livadas and a calendar, not the collective bargaining agreement, was all that needed to be consulted to resolve the case. *Id.* at 114–15, 114 S.Ct. 2068. While the Court left open the possibility of § 301 preemption in cases where provisions of the collective bargaining agreement would need to be interpreted, *see* 512 U.S. at 125 n. 19, 114 S.Ct. 2068, or where a union "has sought or purported to bargain away protections under Section 201 or Section 203," *see id.* at 125, 114 S.Ct. 2068, those circumstances are not present here. As in *Livadas,* plaintiff has not questioned Fox's calculation of the amount of wages owed and only seeks the penalty for withholding payment. Section 219 of the California Labor Code states "no provision of this article (of which §§ 203 and 201.3 are a part) can in any way be contravened or set aside by a private agreement, whether written, oral, or implied." There is no evidence of any waiver of statutory waiting time penalties, "unmistakable" or other-

wise, in the Local 728 CBA. *Livadas,* 512 U.S. at 125, 114 S.Ct. 2068.

■ The resolution of plaintiff's claim in no way depends upon the meaning of the Local 728 CBA; it is largely irrelevant to the dispute. In specifically addressing defendant's arguments, with respect to ¶ 19 of the Local 728 CBA, while Fox claims this provision "expressly" modifies the minimum standards that would otherwise govern pursuant to statute, it largely mirrors the state statutory requirements. As plaintiff points out, the Labor Commissioner may have to reference a calendar to determine whether the requisite time has passed, but this provision does not conflict with the state standard. *See Livadas,* 512 U.S. at 120, 114 S.Ct. 2068 ("In labor preemption cases ... our office is not to pass judgment on the reasonableness of state policy (citations omitted) ... It is instead to decide if a state rule conflicts with or otherwise 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of federal law."). Critically, ¶ 19 is collateral and would only be referred to in order to calculate damages—no interpretation would be required. Additionally, the protections of § 201.5 and § 203 are nonnegotiable rights. Nothing in ¶ 19 of the Local 728 CBA can be interpreted as a waiver of the protections provided by § 203 and § 201.5 as required by *Livadas,* 512 U.S. at 125, 114 S.Ct. 2068. Paragraph 19 fails to even mention waiting time penalties, and a waiver of such state rights must be "clear and unmistakable." *Id.; Lingle,* 486 U.S. at 409–410 n. 9, 108 S.Ct. 1877.

With respect to ¶ 14 of the Local 728 CBA, this provision would not require interpretation in order to resolve plaintiff's claim. Because wages were paid pursuant to discharge, but late, the amount of wages paid is not a genuine issue in dispute despite defendant's contention to the contrary. Even if defendant disputes

plaintiff's claim that he was discharged, resolution of this involves purely factual issues that may be ascertained without the need to interpret the Local 728 CBA.

With respect to ¶ 18, although Fox claims this provision must be interpreted to determine whether daily hires are in fact terminated, laid off or placed on stand-by or relay until more work is available, interpretation of ¶ 18 is completely unnecessary to determine the amount, if any, of waiting time penalties due plaintiff as a result of defendant's late payment of wages.

In sum, the waiting time penalty provision under the California Labor Code is a minimum labor standard that peacefully coexists with the Local 728 CBA. There is simply no need to interpret the Local 728 CBA to resolve plaintiff's claim. As the Supreme Court explains, "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 purposes." *Lingle,* 486 U.S. at 409–10, 108 S.Ct. 1877. Consequently, defendant's motion for summary judgment and for an order compelling arbitration are DENIED and plaintiff's motion for remand is GRANTED. This action is remanded to the Los Angeles Municipal Court.

**C. Plaintiff's Request for Attorneys' Fees**

■ 28 U.S.C. § 1447(c) provides in relevant part, "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." However, while a finding of bad faith is no longer necessary to trigger an award of attorneys' fees, *Moore v. Permanente*

*Medical Group,* 981 F.2d 443, 448 (9th Cir.1992), an award of attorneys' fees is inappropriate where a defendant's attempt to remove the case was "fairly supportable." *Schmitt v. Insurance Co. of North America,* 845 F.2d 1546, 1552 (9th Cir. 1988).

■ Defendant's § 301 preemption argument cannot be said to be "fairly supportable." *Livadas* is squarely on point, and plaintiff's narrow claim for statutory waiting time penalties is not intricately intertwined with the Local 728 CBA. The Court finds that under the circumstances, an award of reasonable attorneys' fees is warranted. Accordingly, plaintiff's motion for attorneys' fees is GRANTED.

Plaintiff's counsel has spent a total of fifteen hours researching and preparing the motion for remand and opposition to defendant's summary judgment motion (10 hours), communicating with opposing counsel (3 hours), and appearing in court at the hearing July 6, 1998 (2 hours). Plaintiff's time counsel bills at a rate of $130 per hour. Pursuant to *Hensley v. Eckerhart,* 461 U.S. 424, 436–437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and the relevant factors delineated in *Kerr v. Screen Extras Guild,* 526 F.2d 67, 70 (9th Cir.1975), the Court finds both the hours expended and rate to be reasonable. Plaintiff shall therefore recover from defendant an award $1,950 in attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c).

The Clerk of the Court shall serve this order on the clerk of the Los Angeles Municipal Court.

**IT IS SO ORDERED.**